UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------- X
                                :
AMRI PATTERSON,                 :
                                :
                Plaintiff,      :
                                :    11 Civ. 7976 (DLC)
     -v-                        :
                                :    OPINION & ORDER
THE CITY OF NEW YORK; DORA      :
SCHRIRO, COMMISSIONER OF        :
N.Y.C.D.O.C.; EVELYN MARIBAL,   :
WARDEN, OTIS BANTUM CORRECTIONAL :
CENTER,                         :
                                :
                Defendants.     :
                                :
------------------------------- X

APPEARANCES:

For pro se plaintiff:
Amri Patterson
B&C# 1411104663
Brooklyn Detention Complex
275 Atlantic Avenue
Brooklyn, NY 11201

For defendants:
Jeffrey Scott Dantowitz
Office of Corporation Counsel NYC
100 Church Street
New York, NY 10007


DENISE COTE, District Judge:

     Pro se plaintiff Amri Patterson ("Patterson"), a former

pretrial detainee at the Otis Bantum Correctional Center ("OBCC")

at Rikers Island, brings this action pursuant to 42 U.S.C. § 1983

for damages against the City of New York, New York City

Department of Correction Commissioner Dora Schriro ("Commissioner

Schriro"), and OBCC Warden Evelyn Maribal ("Warden Maribal").

Patterson alleges that his constitutional rights were violated as a result of overcrowding while he was detained at the OBCC.  The defendants have filed a motion to dismiss Patterson's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the following reasons, the motion is granted.  Patterson, however, shall be given leave to amend two of his claims.

BACKGROUND

The complaint alleges the following facts, which are assumed to be true for the purposes of this motion.[1]  Patterson was placed in an overcrowded holding pen while awaiting medical screening upon his entry into OBCC.  As a result of the overcrowding, Patterson's medical screening "took entirely too long to complete."  He was then housed in a dormitory "full of other detainees that had 60 beds" even though it was supposed to

---

[1] Since Patterson filed his complaint, seven more complaints have been filed by pro se plaintiffs who allege constitutional violations at OBCC in substantially similar terms.  See Contino v. City of New York, No. 11 Civ. 8537 (DLC); Perry v. City of New York, No. 11 Civ. 9161 (DLC); Dixon v. City of New York, No. 11 Civ. 9274 (DLC); Williams v. City of New York, No. 12 Civ. 211 (DLC); Rivera v. City of New York, No. 12 Civ. 760 (DLC); Robertson v. City of New York, No. 12 Civ. 3382 (DLC); and Simmons v. City of New York, No. 12 Civ. 4476 (DLC).  The seven cases have been stayed pending resolution of this motion.  The use of essentially form complaints explains why it is not entirely clear from Patterson's complaint that he is describing conditions that injured him as opposed to conditions that affected his fellow prisoners.  For purposes of this motion, it has been assumed that Patterson is alleging deprivations that personally affected him.

house only 50 detainees.  Patterson does not state how long he was in the holding pen or dormitory.[2]  The overcrowded conditions led to: visitors leaving the prison without seeing him because of frustration with the prolonged registration process; delays in feedings, sick call and delivery of medication; discontinued laundry services; and recreation outdoors, even in the heavy snow and rain.  Patterson alleges violations of his constitutional rights, the New York City Board of Correction's "Minimum Standards" regulations, and consent decrees and orders entered by the Honorable Judge Morris E. Lasker of this court.  Patterson seeks $100,000 in damages.

Patterson submitted a grievance about the violations, but the grievance was ignored.  He claims that he has "done all that I can with the grievance process."  When Patterson spoke to prison officials about his grievance, they responded that he should not have gotten arrested.

Patterson filed his complaint on November 4, 2011. Patterson's claims against Mayor Michael R. Bloomberg and New York City Police Department Commissioner Raymond Kelly were dismissed for failure to allege sufficiently their personal involvement.  The New York City Department of Correction ("DOC") waived service of the summons and complaint on behalf of

---

[2] The defendants state that Patterson was incarcerated, apparently at OBCC, from April 7 through October 31, 2011, when he filed his complaint.

3

Commissioner Schriro and Warden Maribal on December 16, 2011, and
the New York City Law Department waived on behalf of the City of
New York on January 12, 2012.  The defendants moved to dismiss
each of Patterson's claims on March 12, 2012.  The motion to
dismiss and memorandum of law were served by mail on Patterson at
the Brooklyn Detention Complex, where he is currently imprisoned.
Patterson has not filed an amended complaint, opposition to the
motion or otherwise addressed the motion.  The defendants' motion
is treated as unopposed.

## DISCUSSION

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading
must contain a 'short and plain statement of the claim showing
that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129
S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, "a
complaint must contain sufficient factual matter, accepted as
true, to state a claim to relief that is plausible on its face."
Id. (citation omitted).

Applying this plausibility standard is "a context-specific
task that requires the reviewing court to draw on its judicial
experience and common sense."  Id. at 1950.  When considering a
motion to dismiss under Rule 12(b)(6), a trial court must "accept
all allegations in the complaint as true and draw all inferences
in the non-moving party's favor."  LaFaro v. New York
Cardothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009).

Moreover, pleadings filed by pro se plaintiffs are to be construed liberally.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation omitted).  The rule favoring liberal construction of submissions is especially applicable to civil rights claims.  See Weixel v. Bd. of Ed. of the City of New York, 287 F.3d 138, 146 (2d Cir. 2002).  In determining the adequacy of a complaint "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation."  Iqbal, 129 S. Ct. at 1949–50.  Accordingly, a court may disregard "threadbare recitals of a cause of action's elements, supported by mere conclusory statements."  Id. at 1940.

The defendants move to dismiss the complaint because Patterson: (1) failed to exhaust administrative remedies; (2) failed to allege that Commissioner Schriro and Warden Maribal were personally involved; (3) lacks standing for some of his claims; (4) failed to allege sufficiently a constitutional violation; (5) has not adequately pled municipal liability; and (6) failed to allege a physical injury for which he could receive compensatory damages.  This Opinion will address solely the issues of exhaustion and whether the complaint states a claim.

Patterson will be given leave to replead two claims -- his assertions that prison overcrowding deprived him of access to medical care and that discontinued laundry services deprived him of clean clothes.  As a result, it is inappropriate at this time to address most of the legal issues raised by the defendants.

## I. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust all available administrative remedies before he can bring an action with respect to prison conditions.  See 42 U.S.C. § 1997e(a) (codification of exhaustion requirement); Woodford v. Ngo, 548 U.S. 81, 93-103 (2006).  "Exhaustion is 'mandatory' and 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes.'"  Hernandez v. Coffey, 582 F.3d 303, 305 (2d Cir. 2009) (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)).  "Section 1997e(a) requires 'proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  Hernandez, 582 F.3d at 305 (quoting Woodford, 548 U.S. at 90).  "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  Jones v. Bock, 549 U.S. 199, 218 (2007); see also Espinal v. Goord, 558 F.3d 119, 124 (2d Cir. 2009).

6

"[F]ailure to exhaust is an affirmative defense in a lawsuit governed by the PLRA." Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009) (per curiam) (citing Jones, 549 U.S. at 216). Like other affirmative defenses, failure to exhaust may be grounds for dismissal under Rule 12(b)(6) if the defense appears on the face of the complaint. See Jones, 549 U.S. at 215. Prisoners are not required to plead or demonstrate exhaustion in their complaints. Id. at 216.

A prisoner incarcerated by the DOC must exhaust all of the steps of the Inmate Grievance Resolution Program ("IGRP") before bringing an action in this court. Judicial notice is taken of the IGRP, as detailed by the DOC Directive Number 3375R-A ("IGRP Directive") and available online at http://www.nyc.gov/html/doc/downloads/pdf/3375R-A.pdf.[3] The IGRP requires a prisoner to (1) file a grievance with the Inmate Grievance Review Committee ("IGRC"); (2) request a formal hearing before the IGRC if the grievance is not resolved informally or the prisoner has not received a response within five days; (3) appeal an IGRC response to the appropriate commanding officer or designee; (4) appeal to the DOC Central Office Review Committee ("CORC"); and (5) appeal to the New York City Board of Correction. (See IGRP Directive ¶ IV(B)). Grievances not decided within the time limits set forth

---

[3] The defendants are directed to inform the Court if any changes have been made to the IGRP Directive from the version available online.

under the IGRP may be appealed to the next step.   (IGRP Directive ¶ IV(C)(6)).

The defendants contend that it is clear from the complaint that Patterson only filed a grievance and did not take any of the other steps required by the IGRP.   While customarily the defendants must bring a motion for summary judgment to obtain dismissal of a complaint for the failure to exhaust the grievance process, when that failure is sufficiently clear from the face of the pleading dismissal may be appropriate.   See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998).

It is not clear from the complaint what issues Patterson may have included in his grievance.   It is also unclear whether Patterson exhausted the IGRP process.   He states that he did all he could.   While the defendants are correct that the most reasonable inference to be drawn is that Patterson never requested a formal hearing on his grievance, it is possible that Patterson meant to convey that he had exhausted the IGRP process or has an excuse for failure to exhaust.[4]   Accordingly, the complaint may not be dismissed at this stage for Patterson's

---

[4] The Court of Appeals for the Second Circuit has yet to rule on whether a prisoner's failure to exhaust may be excused on any grounds following the Supreme Court's decision in Woodford, 548 U.S. 81.   See Amador v. Andrews, 655 F.3d 89, 102-03 (2d Cir. 2011) (declining to reach the issue of whether excuses for failure to exhaust under Hemphill are still viable after Woodford); see also Macias v. Zenk, 495 F.3d 37, 43 n.1 (2d Cir. 2007); Ruggiero v. Cty. of Orange, 467 F.3d 170, 178 (2d Cir. 2006).

failure to exhaust the IGRP process.

## II. Violations of Consent Decrees and Judge Lasker Orders

Patterson refers to violations of consent decrees and the orders of Judge Lasker.  These are apparent references to the consent decrees and supplemental court orders regarding prisons at Rikers Island entered by Judge Lasker in Benjamin v. Horn, No. 75 Civ. 3073, and related cases.  The cases were later reassigned to the Honorable Harold Baer, Jr.  One of the orders, dated June 23, 1981, prohibited overcrowding by affording each detainee in a dormitory 75 square feet of housing space.  After the PLRA was enacted on April 26, 1996, the defendants in Benjamin moved to terminate the consent decrees and related orders pursuant to provisions of the Act.  By Order dated August 30, 2000, Judge Baer terminated numerous provisions of the consent decrees and orders.  See Benjamin v. Fraser, 161 F. Supp. 2d 151, 153-54 (S.D.N.Y. 2001) (detailing procedural history).  By Order dated December 15, 2000, Judge Baer terminated the order regarding overcrowding, among other orders.  See id.  Judge Baer also terminated provisions in the consent decrees regarding laundry and food services.  Id., aff'd in relevant part by, 343 F.3d 35 (2d Cir. 2003).  Patterson's remaining claims are not implicated by the surviving portions of the Benjamin consent decrees and orders.  Patterson's claims involving the Benjamin consent decrees and orders are therefore dismissed.

III. New York City's "Minimum Standards"

Patterson alleges violations of the "Minimum Standards" prison regulations.  See 40 R.C.N.Y. §§ 1-03–1-06; 1-08—1-11.  A prisoner may bring a lawsuit in federal court against local government officials for violations of his federal rights.  42 U.S.C. § 1983.  Pursuant to Section 1983, that private right of action extends to "the deprivation of any rights, privileges, or immunities secured by the Constitution and [federal] laws."  42 U.S.C. § 1983; see also City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 180 (1997).  Violations of state regulations do not constitute violations of federal rights.  See Edwards v. Johnson, 209 F.3d 772, 779 (5th Cir. 2000) ("a violation of prison regulations in itself is not a constitutional violation"); Hovatar v. Robinson, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) (a violation of a prison regulation "does not equate to a constitutional violation").

Even if the complaint is liberally construed to allege procedural due process violations based on violations of the "Minimum Standards," such claims must be dismissed.  It is true that a state may create a liberty interest for prisoners that is enforceable under the Due Process Clause of the U.S. Constitution.  Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 461 (1989).  But, to create such a liberty interest, a state law, regulation or directive must place "substantive limitations on official discretion," for instance, by using

10

explicit mandatory language or creating substantive predicates
that limit official decision-making and mandate a particular
outcome after relevant criteria have been met.  Id. at 462
(citation omitted).  Explicit mandatory language includes words
such as "shall."  Id. at 463.  In Thompson, a regulation
addressing visitation rights did not create a liberty interest.
Id. at 463-65.  See also Olim v. Wakinekona, 461 U.S. 238, 249-50
(1983) (regulation concerning prisoner transfers did not create a
liberty interest).

    None of the deprivations of which Patterson complains rise
to the level of a violation of a protectable liberty interest.
The "Minimum Standards" associated with these deprivations either
do not create substantive predicates that limit the exercise of
discretion or are not implicated by Patterson's allegations.  For
instance, the regulations involving hygiene, overcrowding and
recreation do not have substantive predicates that would require
prison officials to maintain those standards.  See 40 R.C.N.Y. §§
1-03, 1-04, 1-06.  The visitation regulation provides a prisoner
with the right to be notified and an opportunity to be heard
before the prison may limit a prisoner's visiting rights with a
particular visitor or a prisoner's right to contact visits.  See
40 R.C.N.Y. § 1-08(j).  Patterson's visitation claims, however,
involve delays in seeing visitors and do not involve a limitation
on particular visitors or on contact visits.  Patterson has not
alleged any facts to implicate the other regulations cited in his

11

complaint.  Therefore, Patterson has failed to allege any facts that might implicate a procedural due process claim.[5]

IV. Fourteenth Amendment

Patterson's constitutional claims arise from his rights under the Fourteenth Amendment.  A pretrial detainee's constitutional claims regarding his conditions of confinement arise under the Fourteenth Amendment while a convicted prisoner's rights arise under the Eighth Amendment.[6]  "Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished although that punishment may not be 'cruel and unusual' under the Eighth Amendment."  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).

In a pretrial detainee's challenge to conditions of confinement under the Fourteenth Amendment, "the proper inquiry

---

[5] The defendants contend that the alleged violations of the "Minimum Standards" do not implicate constitutionally protected liberty interests because such violations do not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," as described in Sandin v. Conner, 515 U.S. 472, 484 (1995).  Sandin, however, "does not apply to pretrial detainees and [], accordingly, pretrial detainees need not show that an imposed restraint imposes atypical and significant hardships to state deprivation of a liberty interest protected by procedural due process."  Iqbal v. Hasty, 490 F.3d 143, 163 (2d Cir. 2007), rev'd on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009).

[6] The defendants observe that Patterson does not state explicitly that he was a pretrial detainee at the time that he suffered his alleged injuries.  The complaint does, however, state that Patterson was sent to a dormitory "full of other detainees[.]"  It will be assumed for purposes of the discussion that follows that Patterson was a pretrial detainee.

is whether those conditions amount to punishment of the detainee." Id. at 535.  In determining what amounts to punishment, a court must decide whether the restrictions or conditions "are rationally related to a legitimate nonpunitive governmental purpose and whether they appear excessive in relation to that purpose." Id. at 561.  "[G]enuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment." Id. at 542.

On the other hand, prison measures designed to ensure the detainee's presence at trial or the effective management of the detention facility may "dispel any inference that such restrictions are intended as punishment." Bell, 441 U.S. at 540. "[P]rison administrators [are to be] accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547.

> "Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility.  And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"

Id. at 537.  Accordingly, in Bell, the Supreme Court rejected a claim that double-bunking violated a detainee's Fourteenth Amendment rights even though that practice "taxed some of the

13

equipment or particular facilities in certain of the common areas." Id. at 543.

It is well recognized that "the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner." County of Sacramento v. Lewis, 523 U.S. 833, 849-50 (1998) (quoting City of Revere v. Massachusetts Gen. Hospital, 463 U.S. 239, 244 (1983)); see also Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996). As a consequence, a prison official's deliberate indifference to the serious medical needs of a prisoner not only violates the Eighth Amendment rights of sentenced prisoners but also the Fourteenth Amendment rights of pretrial detainees. Lewis, 523 U.S. at 850. Indeed, the Court of Appeals for the Second Circuit has concluded that detainees asserting claims that officials were deliberately indifferent to a serious threat to their health or safety must meet the Eighth Amendment standard and show that the official knew of and disregarded an excessive risk to the detainee's health or safety. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009). In other words, the detainee must show that the defendant "was both aware of facts from which the inferences could be drawn that a substantial risk of serious harm existed, and also drew the inference." Id. (citation omitted). In contrast to situations in which an inmate is challenging a "discrete judgment[]" of state officials, however, when there is a protracted failure to provide safe prison conditions, a pretrial

14

detainee need only show "actually imminent substantial harm." Id. at 70 (citation omitted).

    1. Overcrowding

    Patterson's allegations that he was placed in an overcrowded holding pen and dormitory do not state a due process violation. Patterson alleges that the holding pen in which he was held upon entry into OBCC was "overcrowded" and that the dormitory in which he was housed held ten more prisoners than the 50 for which it was designed, or 120% of its designated capacity.  This latter claim apparently arises from the "Minimum Standards."  See 40 R.C.N.Y. § 1-04(c)(5)(i) (a multiple-occupancy area shall house no more than 50 detainees).

    This violation of occupancy standards, standing alone, does not violate constitutional rights.  See Bell, 441 U.S. at 542 (detainees do not have due process rights to "one man, one cell"); see also Brown v. Plata, 131 S.Ct. 1910, 1944-45 (2011) (in affirming order that state reduce its prison population to 137.5% of design capacity to remedy inadequate provision of health care, stating that "courts must not confuse professional standards with constitutional requirements"); Rhodes v. Chapman, 452 U.S. 337, 349 (1981) (double-celling of prisoners where prison population was 38% above design capacity did not violate the Eighth Amendment).  Overcrowding amounts to punishment and constitutes a due process violation if it "subjects a detainee over an extended period to genuine privations and hardship not

reasonably related to a legitimate governmental objective." Lareau v. Manson, 651 F.2d 96, 103 (2d Cir. 1981).  Therefore, Patterson's allegations of overcrowding, standing alone, do not constitute a due process violation.

2. Delays in Medical Screening, Sick Call and Medication

Patterson's conclusory allegations that overcrowded conditions led to delays in medical screening and access to sick call and medication fail to allege plausibly a due process violation.  Patterson alleges that his medical screening took "entirely too long" and that it "takes much longer to conduct" sick call and provide medications because of overcrowding. Patterson does not describe any health condition for which he required treatment or medication nor identify any occasion on which he attempted to be placed on "sick call."  Moreover, Patterson does not describe how long it took for him to obtain any medical care.  Without this specificity, Patterson has failed to allege plausibly that the delays were excessive or that he suffered actual or imminent substantial harm as a result of the delays.  The allegation of delays, without more, does not convert a condition of confinement into punishment or "genuine privations and hardship over an extended period of time."  See Bell, 441 U.S. at 542.

Patterson will be given leave to replead this claim.  If he chooses to file an amended complaint, Patterson should describe his health condition which required care, the length of any

16

delays in his medical care and screening, and whether there was any actual or imminent harm caused by the delays.

### 3. Recreation

Patterson's claim that detainees were "made to have outdoor recreation even in heavy snow and rain" does not state a due process violation.  The Supreme Court has recognized exercise as a human need protected by the Constitution.  Wilson v. Seiter, 501 U.S. 294, 304 (1991) (Eighth Amendment); see also Williams v. Greifinger, 97 F.3d 699, 704 (2d Cir. 1996) (same); Lareau, 651 F.2d at 100, 104 (Fourteenth Amendment).  But, there is no constitutional right to exercise indoors.

> "No doubt indoor exercise space would be useful to assure opportunity for vigorous exercise during inclement weather... [h]owever, []an occasional day without exercise when weather conditions preclude outdoor activity [is not] cruel and unusual punishment. With outdoor recreation space provided and opportunity for its daily use assured, the absence of additional exercise space indoors and of recreational equipment for use in the outdoor space is not a denial of constitutional rights."

Anderson v. Coughlin, 757 F.2d 33, 36 (2d Cir. 1985) (Eighth Amendment).

### 4. Visitation

Patterson's allegation that overcrowding led to a prolonged registration process for visitors fails to state a due process violation.  "[F]reedom of association is among the rights least compatible with incarceration."  Overton v. Bazzetta, 539 U.S. 126, 131 (2003).  As a result, limitations on visits that are

reasonably related to a legitimate penological interest do not violate a prisoner's constitutional right.  This is true for pretrial detainees as well.  See Block v. Rutherford, 468 U.S. 576, 585-89 (1984) (low risk pretrial detainees have no constitutional right to contact visits).  Nevertheless, the withdrawal of visitation privileges for long periods or in an arbitrary manner "may present different considerations." Overton, 539 U.S. at 137.

A prolonged visitor registration process does not constitute punishment.  A prison is entitled to adopt a registration process for visitors.  A registration process prevents the disruption of prison administration, which constitutes a legitimate government purpose.  See Smith v. Coughlin, 748 F.2d 783, 788 (2d Cir. 1984).  Patterson does not allege that the registration process is excessive in relation to that government purpose.  Nor does Patterson allege that the OBCC withdrew his visitation privileges.  A visitor's impatience with a registration process, even a lengthy one, does not convert this claim into a denial of due process.

Plaintiff will not be given leave to replead this claim since there is no reasonable likelihood that he would be able to plead a violation of his constitutional rights.  His complaint implicitly admits that he was entitled to receive visitors and that those visitors could have seen him if they had waited for the registration process to be completed.

18

5. Timely Feedings

Patterson's allegation that it took longer to feed him and other prisoners than would have been the case in a less overcrowded facility also fails to state a due process violation. Of course, a substantial deprivation of food may constitute punishment.  See Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983).  Similarly, being given only a single meal a day constitutes a violation of constitutional rights.  Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir. 1977).  But, Patterson complains only that his meal times were prolonged.  This does not constitute a violation of the Due Process Clause.

6. Laundry Services

Patterson has also failed to allege a due process violation regarding laundry services.  Patterson asserts that "[s]ome services have been discontinued, like laundry services." "[P]risoners are entitled under the constitution to have clothing that is clean or to have an opportunity to clean it themselves." Benjamin, 161 F. Supp. 2d at 178 (collecting cases), aff'd in relevant part and vacated in part, 343 F.3d 35 (2d Cir. 2003). In Benjamin, the court held that pretrial detainees' due process rights were not violated where bar soap or laundry detergent was available to prisoners so that they could clean clothes in a sink.  Id. at 178-79.

Patterson does not allege that he was deprived the opportunity to clean his clothes and has therefore failed to

19

allege a genuine privation or hardship that would constitute punishment under the Due Process Clause.  Patterson will be given leave to replead this claim, however, to determine whether he is able to add factual allegations that will state a claim.

CONCLUSION

The defendants' March 12, 2012 motion to dismiss is granted. Through a separate scheduling order, the plaintiff will be given leave to amend his claims regarding medical care and laundry services.

SO ORDERED:

Dated:    New York, New York
          August 9, 2012

                                 _____
                                      DENISE COTE
                                 United States District Judge

20

Copies mailed to:


Amri Patterson
B&C#: 1411104663
Brooklyn Detention Complex
275 Atlantic Avenue
Brooklyn, NY 11201


Jeffrey Scott Dantowitz
Office of Corporation Counsel NYC
100 Church Street
New York, NY 10007